UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| **MICHAEL BALONEY and JOANN BALONEY,** | * * * | Civil Action No. 6:14-cv-00467 |
| Plaintiffs, | * * | |
| VERSUS | * * | JUDGE DOHERTY |
| **TOYOTA MOTOR SALES, U.S.A., INC.,** | * * * | MAGISTRATE HILL |
| Defendant. | * * | Jury Trial Requested |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**MEMORANDUM IN SUPPORT OF TOYOTA MOTOR SALES, U.S.A., INC.'S
MOTION TO EXCLUDE TESTIMONY OF JOHN LAUGHLIN**

TABLE OF CONTENTS

Introduction ..……………………………………………………………………………………….. 3

Plaintiff's Claim and Mr. Laughlin's Opinion  ……………………………………............  3

Mr. Laughlin's Opinion Does Not Have A Reliable Basis,
    And Is Therefore Inadmissible ...........…………………………………………………  8

Mr. Laughlin's Opinion Is Irrelevant, And Is Therefore Inadmissible ………………………... 11

Conclusion ……………………………………………………………………………………... 13

TABLE OF AUTHORITIES

Christophersen v. Allied-Signal Corp., 939 F.2d 1106, 1109 (5th Cir. 1991)................................ 8

Daubert v. Merrill Dow Pharmaceuticals, 509 U.S. 579, 113 S. Ct. 2786 (1993)...... 3, 8, 9, 11, 14

Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938) ............................................................................ 4

Federal Rule of Evidence 401................................................................................................. 3, 11

Federal Rule of Evidence 402................................................................................................. 3, 11

2

Federal Rule of Evidence 702 ...................................................................................... 3, 8, 10, 11

Guillory v. Domtar Indus., 95 F.3d 1320, 1331 (5th Cir. 1996) ............................................ 10, 11

Jeansonne v. Sutherland Bldg. Material Centers L.P., 2013 U.S. Dist. Lexis 130046, *4, 2013
    WL 4893787 (W.D. La. 2013) ........................................................................................... 10

Louisiana Products Liability Act
    La. Rev. Stat. 9:2800.51 *et seq.* (West 2012) ........................................................... 4, 9, 11, 12

Moore v. Ashland Chem., Inc., 151 F.3d 269, 275 (5th Cir. 1998) ......................................... 8, 10

Sadler v. Int'l Paper Co., 2014 U.S. Dist. LEXIS 136386, *111 (W.D. La. 2014) ....................... 12

Seaman v. Seacor Marine L.L.C., 326 Fed. Appx. 721 (5th Cir. 2009) ....................................... 10

Welch v. Technotrim, Inc., 34,355 (La. App. 2d Cir. 1/24/01); 778 So. 2d 728, 733, writ denied,
    2001-0512 (La. 6/15/01); 793 So.2d 1232 ..................................................................... 4, 6, 12

MAY IT PLEASE THE COURT:

Defendant Toyota Motor Sales, U.S.A., Inc. ("TMS") moves the Court to exclude the testimony of Mr. John Laughlin from admission into evidence at trial of this matter. Mr. Laughlin is offered by plaintiff for the purposes of trying to prove that the airbag system in the subject 2012 Toyota Avalon did not perform as designed. However, Mr. Laughlin's opinion is not based on a well-recognized methodology or upon facts usually relied upon by experts in the field of vehicle airbag systems. As such, it does not meet the standards required for admission of expert opinion established by the Supreme Court of the United States in <u>Daubert v. Merrill Dow Pharmaceuticals</u>, 509 U.S. 579, 113 S. Ct. 2786 (1993) and Federal Rule of Evidence 702. Mr. Laughlin's opinion is also demonstrably erroneous, and therefore cannot have any probative value and is irrelevant and inadmissible under Fed. R. Evid. 401 and 402.

**1.     Plaintiff's Claim and Mr. Laughlin's Opinion**

Plaintiff was the front seat passenger in a 2012 Toyota Avalon being driven by Albert Baloney on Verot School Road in Lafayette, Louisiana in the early morning hours of April 1, 2013. Plaintiff alleges that another vehicle entered the Avalon's lane of travel, forcing Albert Baloney to steer to the right and into a ditch, where the Avalon struck a metal culvert, resulting in the car rolling over and impacting the ditch embankment with its roof.[1] The alleged other vehicle was never identified.[2] Plaintiff does not allege that any vehicle malfunction or defect caused the incident itself, nor does plaintiff allege that the Avalon was defective in design. Plaintiff's claim against TMS is that the "passenger side [frontal] airbag [of the Avalon] did not

---

[1]     Suit for Damages, ¶3 (Rec. Doc. 1-2).

[2]     The investigating state trooper cited Albert Baloney for the incident, for careless operation of the Avalon. Deposition of Trooper Scott Lopez at p. 22 – Exhibit A.

deploy as designed resulting in [plaintiff] sustaining severe injuries."³  Because it "establishes the exclusive theories of liability for manufacturers for damage caused by their products," La. Rev. Stat. 9:2800.52 (West 2012),⁴ the Louisiana Products Liability Act ("LPLA") controls plaintiff's claims against TMS.⁵

A claimant alleging a defect in construction or composition must prove that the product "deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer."  La. Rev. Stat. 9:2800.55 (West 2012).  The condition that renders a product unreasonably dangerous in construction or composition must exist when the product leaves its manufacturer's control.  La. Rev. Stat. 9:2800.54 (C) (West 2012).  **To establish a manufacturing defect under the LPLA, "a claimant must demonstrate not only what a manufacturer's specifications or performance standards are for a particular product, but how the product in question materially deviated from those standards so as to render it 'unreasonably dangerous.'"**  Welch v. Technotrim, Inc., 34,355 (La. App. 2d Cir. 1/24/01); 778 So.2d 728, 733, writ denied, 2001-0512 (La. 6/15/01); 793 So.2d 1232.  Plaintiff has alleged that the airbag system in the Avalon "did not deploy as designed," so plaintiff's claim, in the language of the LPLA, is that the Avalon's airbag system deviated from the manufacturer's specifications or performance standards in a manner which rendered it unreasonably dangerous.  In order to prevail, plaintiff

---

3   Suit for Damages, ¶3 (Rec. Doc. 1-2).

4   TMS was not the manufacturer "in fact" of the subject Avalon, but acknowledges for purposes of this motion that, as a distributor of the vehicle, it would be deemed a "manufacturer" under the Louisiana Products Liability Act.

5   The substantive law to be applied in this case is that of Louisiana, including the provisions of the Louisiana Civil Code, Louisiana statutes, and cases interpreting them.  When a claim in a case before a federal court arises under state law – as is the case here – the substantive law of that state will be applied to resolve the state law related issue.  Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938).

must, among other things, prove: 1) what the manufacturer's specifications or performance standards for the Avalon were, and 2) how the Avalon materially deviated from those standards so as to render it unreasonably dangerous.  Id.

Plaintiff will offer Mr. John Laughlin as an expert witness "to testify concerning the 2012 Toyota Avalon in question and whether the airbag should have deployed with the type of impact involved."[6]  However, Mr. Laughlin's conclusions as to the non-deployment of the airbag are demonstrably erroneous, and, as he himself concedes, based on assumptions and not factual knowledge.  Mr. Laughlin's opinion that the front passenger frontal airbag should have deployed in the incident is based upon his interpretation of data downloaded from the Avalon's Event Data Recorder (EDR) and unsupported assumptions made by him regarding the deployment threshold applicable to the subject Avalon.  Mr. Laughlin's opinion is not based on a well-founded methodology or facts usually relied on by other experts in the field when forming such opinions, and, as a result, his conclusion is not only incorrect but also legally incompetent and inadmissible.

Mr. Laughlin inspected the Avalon on May 2, 2013, and downloaded data from the EDR.[7]  In his report, Mr. Laughlin opines that the decision on whether to deploy the airbag must be made by the airbag control module in the first 20 milliseconds of a crash.  However, <u>Mr. Laughlin admits in his report that he does not know whether the EDR information concerning</u>

---

[6]     Rule 26(f) Report – Phase II (Rec. Doc. 14).

[7]     Defendant was not afforded the opportunity to inspect the Avalon.  After Mr. Laughlin's examination of the Avalon, plaintiff failed to preserve the vehicle.  However, the EDR data downloaded by Mr. Laughlin in fact shows that the Avalon's airbag system <u>did</u> perform as designed.  TMS reserves the right to address the issue of plaintiff's spoliation of evidence in further briefing should the Court deny TMS's pending motion for summary judgment.

<u>those first 20 milliseconds of the incident conforms to Toyota's specifications.</u>[8]  <u>Without knowing what the airbag deployment design specifications for the vehicle are, Mr. Laughlin cannot say that the Avalon's airbag system did not perform as designed.</u>  This is a fatal deficiency in plaintiff's proof since Mr. Laughlin cannot show either of the elements required to show that the airbag system "materially deviated from [the manufacturer's] standards."  <u>Welch,</u> 778 So. 2d 733.

The first essential element of plaintiff's case is that plaintiff must demonstrate what Toyota's specifications or performance standards were for the Avalon.  Mr. Laughlin expressly states that he does not know what those specifications are, thus he cannot offer testimony on this point.  The second essential element of plaintiff's claim is to show that the Avalon materially deviated from those standards so as to render it unreasonably dangerous.   Mr. Laughlin cannot offer any testimony on this issue either.  Mr. Laughlin's assumption that the change in velocity ("Delta-V") experienced by the Avalon during the crash met the threshold for airbag deployment is not based on a comparison of the Delta-V in the incident with the Delta-V at which the Avalon's airbag was designed to deploy.  It is merely based on his unsupported conjecture that the Delta-V was sufficient to be "in the range for which an airbag deployment is typically expected."[9]  Not only is this unsupported conjecture, it is irrelevant conjecture; all that is relevant to plaintiff's manufacturing claim is what the design thresholds were for the airbag system in the <u>subject</u> Toyota Avalon, not what may or may not be "typical" for vehicles in general.  Therefore, Mr. Laughlin's opinion does not have a reliable methodology, nor does it have a sufficient

---

[8]  Report of John Laughlin dated August 8, 2013, p. 2 – Exhibit B.  Plaintiff made no discovery requests to TMS, however TMS voluntarily provided the test reports and standards relevant to the Avalon's airbag system to plaintiff on January 15, 2015.

[9]  <u>Id</u>.

factual basis. It is merely speculation that the Avalon's airbag system did not perform as designed. Mr. Laughlin cannot logically, or as a matter of legally sufficient evidence, conclude that the Avalon did not conform to Toyota's design specifications (as required by the LPLA) when he does not know what those design specifications are.

Mr. Laughlin gives no description of his methodology other than his "experience." Mr. Laughlin admits that he does not know the relevant airbag deployment thresholds applicable to the subject Avalon. He merely assumes that the longitudinal Delta-V experienced by the Avalon was sufficient to deploy the airbag.[10] And, although TMS has no burden of proof, TMS can demonstrate that Mr. Laughlin's conclusion as to whether the airbag should have deployed is not only baseless but also erroneous. In fact, the airbag system did perform as designed.

As explained by defense experts Dr. Thomas Perl and Mr. Gregory Miller, the Delta-V of 13.7 mph reported by Mr. Laughlin's EDR download does not meet the design deployment criteria for the impact experienced by the subject Avalon.[11] The Avalon's airbag deployment threshold for an oblique collision – the closest representation of the subject crash – is 18.6 mph; the Delta-V for the other possible type of collision experienced by the Avalon, a "head-on" collision, is 16.2 mph.[12] In fact, the Delta-V of 13.7 mph is below all of the various airbag deployment thresholds for the Avalon.[13] Mr. Laughlin did not know this fact because he did not know what the thresholds were for the subject vehicle. It was, therefore, proper that the airbag

---

[10] The longitudinal Delta-V (or change in velocity) is an important factor in determining if a frontal airbag should deploy in an impact.

[11] Declaration of Thomas Perl, at ¶¶3, 9, 10 – Exhibit C. Declaration of Gregory Miller, at ¶¶3, 9 – Exhibit D.

[12] Declaration of Thomas Perl, at ¶¶10 (Exhibit C); Declaration of Gregory Miller, at ¶¶9 (Exhibit D).

[13] The various airbag deployment thresholds are: 18.6 mph (30 kph) for the oblique collision test, 16.25 mph (26 kph) for the rigid fixed front barrier, 18.6 mph (30 kph) for an offset deformable barrier, 16 mph (26 kph) for the pole impact, and 20 mph (32 kph) for an underride collision. Declaration of Gregory Miller, at ¶¶9 (Exhibit D). It is unclear from Mr. Laughlin's "report" if he was utilizing a Delta-V of 13.7 mph or 11.9 mph, but in any event both are below the design performance criteria for the subject Avalon.

did not deploy in this incident; the airbag system performed as designed and Mr. Laughlin's opinion is completely incorrect.

## 2. Mr. Laughlin's Opinion Does Not Have A Reliable Basis, And Is Therefore Inadmissible.

Mr. Laughlin's opinion is inadmissible because it fails to comport with the requirements of <u>Daubert v. Merrill Dow Pharmaceuticals</u>, 509 U.S. 579, 113 S. Ct. 2786 (1993) and Fed. R. Evid. 702.  When analyzing purported expert evidence under <u>Daubert</u> in order to fulfill their gate-keeping role, courts must consider whether the facts upon which the expert relies are the same type as are relied upon by other experts in the field and whether in reaching his conclusion the expert used a well-founded methodology.  <u>Christophersen v. Allied-Signal Corp.</u>, 939 F.2d 1106, 1109 (5th Cir. 1991) (<u>en banc</u>) (<u>per curiam</u>), <u>abrogated on other grounds</u>.  In order to determine whether a purported expert has used a valid or reliable methodology, the Court may look to these non-exclusive factors:  1) whether the expert's theory can be or has been tested; 2) whether the theory has been subject to peer review and publication; 3) the known or potential rate of error of a technique or theory when applied; 4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community.  <u>Moore v. Ashland Chem., Inc.</u>, 151 F.3d 269, 275 (5th Cir. 1998), citing <u>Daubert</u>, 509 U.S. 579, 593-95.

When these factors are applied to Mr. Laughlin's opinion regarding airbag deployment, it is clear that Mr. Laughlin's opinion cannot be said to be based on a "well-founded" methodology.  In fact, he has no methodology, and instead just assumes that the subject Avalon did not perform in conformance with its design criteria.  Mr. Laughlin admits that there is "no industry standard for airbag deployment thresholds" and that he does not know the thresholds specific to the Avalon.  Those concessions alone preclude him, under <u>Daubert</u>, from opining on

8

whether the subject Avalon performed as it was designed, which is the ultimate issue under the LPLA in a manufacturing defect claim. Mr. Laughlin's statement in his report that the impact was "in the range for which an airbag is typically expected" is – putting aside its inaccuracy – simply irrelevant for an LPLA claim; plaintiff must prove that the subject vehicle did not perform in accordance with its own design specifications, and what specifications may or may not apply to other vehicles is of no moment.

Mr. Laughlin's conclusion is not testable, as it is based purely on his speculation that the impact sustained by the subject Avalon met the criteria for airbag deployment, not any comparison with the actual criteria applicable to the Avalon, or any other replicable scientific analysis. For the same reason, the basis for Mr. Laughlin's opinion cannot be subject to peer review, and cannot be said to be generally accepted within the scientific community. Mr. Laughlin did not use any specific standards or controls and could not have done so since he does not know the standards to be applied in this case. Mr. Laughlin cannot compare the deceleration experienced by the Avalon in the subject incident with the amount of deceleration required to deploy the Avalon's passenger frontal airbag because he does not know what the latter is. It is clear that there is no methodology here at all. Mr. Laughlin's opinion is based on conjecture, not any reliable, testable, generally accepted methodology.

Not only is there no reliable and testable method supporting Mr. Laughlin's opinion, but it is also fails to meet the requirement of <u>Daubert</u> that the expert opinion be based on the types of facts that would typically be used by an expert in relation to airbag deployment. Mr. Laughlin states that he does not know what the airbag deployment specifications for the Avalon are. Those specifications are essential to determine whether the airbag should have deployed. The specifications are not just the type of facts typically relied on by an expert making a

9

determination regarding airbag deployment, they are <u>precisely</u> the facts on which such an expert would base his opinion. Since Mr. Laughlin prepared his opinion without reference to the actual applicable airbag deployment thresholds, this precludes him from opining as to whether the Avalon's airbag should have deployed in the incident.

The party seeking to have expert opinion testimony admitted into evidence bears the burden of demonstrating, by a preponderance of the evidence, that the expert's findings and conclusions are based on the scientific method and, therefore, are reliable. <u>Moore</u>, 151 F.3d at 276. A failure to ascertain relevant facts and to use a well-founded methodology will result in the exclusion of the purported expert's testimony from evidence. <u>See</u>, <u>e.g.</u>, <u>Seaman v. Seacor Marine L.L.C.</u>, 326 Fed. Appx. 721 (5th Cir. 2009), in which the Fifth Circuit affirmed the trial court's exclusion of expert testimony that was not based on any proper methodology, or specific facts, and which the court found was based on nothing other than plaintiff's counsel's representations as to the facts. The court held that "the expert's testimony must be reliable at each and every step or else it is inadmissible." <u>Seaman,</u> 326 Fed. Appx. at 725. The expert's opinion was "mere guesswork" and she did not rely on data which sustained her opinions. <u>Id</u>. at 726-728. <u>See</u>, <u>also</u>, <u>e.g.</u>, <u>Jeansonne v. Sutherland Bldg. Material Centers</u> L.P., 2013 U.S. Dist. Lexis 130046, *4, 2013 WL 4893787 (W.D. La. 2013) (finding the expert report offered only "the sort of 'unsupported speculation or subjective belief' that we are bound under F.R.E. 702 and Daubert to exclude at trial," because it "employs no method of reasoning and demonstrates no application of reliable principles to the facts of plaintiff's … case[,]" rendering it irrelevant and unreliable). There is no doubt that "expert" opinions without knowledge of the facts and circumstances of a case are to be excluded. As the Fifth Circuit held in <u>Guillory v. Domtar Indus.</u>, 95 F.3d 1320, 1331 (5th Cir. 1996):

10

> Though the district judge serves as a gatekeeper for expert evidence, it is an important role designed to extract evidence tainted by farce or fiction. Expert evidence based on a fictitious set of facts is just as unreliable as evidence based upon no research at all. Both analyses result in pure speculation.

Mr. Laughlin's opinion is utterly lacking <u>both</u> a factual basis and a reliable methodology. Mr. Laughlin has opined that the Avalon's airbag should have deployed, but he cannot say what the threshold for such deployment was, and he admits that there is no general industry standard but that it is vehicle specific. Due to his lack of knowledge, Mr. Laughlin was unable to compare the Delta-V experienced by the Avalon, as recorded in the EDR data, with the design deployment threshold Delta-V, which is exactly what he is required to do in order to give an opinion on whether the threshold for airbag deployment was met. Mr. Laughlin's "methodology" in reaching his opinion is non-existent, and it does not utilize factual information that other experts in airbag systems would rely on when determining whether an airbag should have deployed. As a result, Mr. Laughlin's opinion is unreliable, and amounts to nothing more than the "pure speculation" rejected by the Fifth Circuit in <u>Guillory</u>. Therefore, Mr. Laughlin's opinion cannot qualify as competent expert evidence, and is not admissible pursuant to <u>Daubert</u> and Fed. Rule Evid. 702.

3. **Mr. Laughlin's Opinion Is Irrelevant, And Therefore Inadmissible.**

Not only must Mr. Laughlin's erroneous opinion be excluded because it is does not meet the requirements for admissible expert evidence, but it must also be excluded because it cannot have any probative value and is therefore irrelevant and inadmissible under Fed. R. Evid. 401 and 402.

Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action. Fed. R. Evid. 401. Evidence that is not relevant is not admissible. Fed. R. Evid. 402. Where an expert's

11

opinion is factually flawed, it is irrelevant because it does not tend to make any fact in evidence more or less probable, nor assist the jury in understanding the evidence or determining a fact in issue. See, e.g., Sadler v. Int'l Paper Co., 2014 U.S. Dist. LEXIS 136386, *111 (W.D. La. 2014) (expert's opinion relied on maximum permitted emission levels, but the actual emissions levels in the case were lower than those permitted, rendering the expert's opinion, testimony, and report irrelevant).

To prove his claim that the Avalon's airbag system did not perform as designed, plaintiff must show: 1) what the manufacturer's specifications or performance standards for the Avalon were, and 2) how the Avalon materially deviated from those standards so as to render it unreasonably dangerous. La. Rev. Stat. 9:2800.55; Welch v. Technotrim, Inc., 778 So.2d 728, 733. Mr. Laughlin admits in his report that he does not know what Toyota's specifications are for deployment of the Avalon's airbag. Therefore, he cannot provide any testimony that would assist the jury on making a determination as to what those specifications are, or otherwise provide evidence which would make any claim as to those specifications more or less probable. Mr. Laughlin does not know any more about the actual specifications for deployment of the Avalon's airbag in this case than any juror. As such, anything that Mr. Laughlin has to say on that issue is irrelevant and any testimony by him regarding the threshold for deployment of the Avalon's airbag must be excluded.

Neither can Mr. Laughlin offer any relevant testimony on the issue of whether the Avalon materially deviated from Toyota's standards. Because Mr. Laughlin had no knowledge of the design threshold for airbag deployment, he could not compare the actual performance of the Avalon's airbag system in the incident with Toyota's intended performance. Mr. Laughlin's inability to compare the Avalon's Delta-V, as recorded in the EDR data, with the actual design

deployment threshold Delta-V for the Avalon renders his opinion completely irrelevant, since plaintiff is required to make precisely that comparison in an airbag non-deployment claim – to show that the Delta-V experienced by the vehicle in the crash met or exceeded the design threshold for airbag deployment in the crash. Again, Mr. Laughlin cannot provide any testimony which would tend to make any fact related to whether the Avalon materially deviated from Toyota's standards more or less probable, nor assist the jury in making that determination.

Mr. Laughlin's opinion is factually flawed and completely erroneous. Not only does his opinion rest on a lack of knowledge of the actual facts of the case, but, as demonstrated by TMS's experts, his conclusion is clearly wrong. The Delta-V experienced by the Avalon in the crash did not meet the threshold for airbag deployment. A factually flawed expert opinion is irrelevant and inadmissible, and, therefore, Mr. Laughlin must be precluded from offering testimony at trial of this matter.

## **CONCLUSION**

Mr. Laughlin is to testify regarding "whether the airbag should have deployed with the type of impact involved." By his own admission, Mr. Laughlin does not know the actual design deployment threshold Delta-V for the subject Avalon, and, therefore, he did not compare the Delta-V experienced by the Avalon in the subject incident with the <u>design</u> deployment threshold. As a result, Mr. Laughlin's opinion is pure speculation. It is not based on any methodology at all, and certainly not a well-founded one, since Mr. Laughlin did not have the factual information required to reach an accurate conclusion on whether the airbag should have deployed. Nor did Mr. Laughlin base his opinion on facts usually relied on by experts in airbag systems when determining whether deployment criteria were met. In addition, the EDR data downloaded by Mr. Laughlin actually shows that the airbag system <u>did</u> function as designed. Mr. Laughlin is unable to provide reliable or relevant evidence on what the design threshold for deployment of

the Avalon's airbag is, nor on whether the Avalon performed in accordance with that threshold. These are the very issues for which plaintiff offers him as an expert. Therefore, the principles established by the Supreme Court in <u>Daubert</u> and the Federal Rules of Evidence preclude Mr. Laughlin from giving testimony in this case, and he should be excluded as a witness at trial.

Respectfully submitted,

  /s/ Mark N. Bodin
**C. G. NORWOOD, JR. (NO. 10083)**
**MARK N. BODIN (No. 18803) (T.A.)**
**SARAH E. McMILLAN (No. 29717)**
**MCGLINCHEY STAFFORD, PLLC**
12th Floor, 601 Poydras Street
New Orleans, Louisiana 70130
Telephone: (504) 586-1200
Facsimile: (504) 596-2861

**ATTORNEYS FOR TOYOTA MOTOR SALES, U.S.A., INC.**

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on the 26th day of May, 2015, a copy of this pleading was filed electronically with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all known counsel of record.

  /s/ Mark N. Bodin
MARK N. BODIN