UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

MICHAEL and JOANN BALONEY     *

VERSUS     *   CIVIL DOCKET NO. 6:14-CV-00467

TOYOTA MOTOR SALES, U.S.A,     *   JUDGE DOHERTY
INC.     *   MAGISTRATE JUDGE HILL

**********************************************************************

## OPPOSITION TO MOTIONS FOR SUMMARY JUDGMENT AND EXCLUSION OF EXPERT TESTIMONY

**NOW INTO THIS COURT**, through undersigned counsel, comes Michael Baloney, plaintiff in the above matter, who opposes defendant's motion for summary judgment on the grounds that a genuine issue of material fact does exist as to whether the air bags in plaintiff's 2012 Toyota Avalon should have deployed in an April 1, 2013 accident in Lafayette, Louisiana. Additionally, a genuine issue of material fact exists as to whether the deployment would have prevented plaintiff, Michael Baloney, from sustaining serious and crushing injuries to his back in this accident. Additionally, plaintiff opposes defendant's motion to exclude the expert testimony of John C. Laughlin, plaintiff's expert. Its motion should be denied because Mr. John Laughlin is a highly qualified expert who has been accepted as an expert in over 100 cases in both Federal and State courts, and meets all the requirements of an expert. Accordingly, the summary judgment motion should be dismissed or referred to the merits, and the

exclusion motion should be denied.

RESPECTFULLY SUBMITTED

s/Donald L. Mayeux
**Donald L. Mayeux - #9130**
P. O. Box 1460
Eunice, Louisiana   70535
Telephone:  (337) 457-9610
Facsimile: (331) 457-9648
Attorney for **Michael Baloney**

## CERTIFICATE

**I HEREBY CERTIFY** that on this 19th day of June, 2015, a copy of this pleading was filed electronically with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all known counsel of record.

s/Donald L. Mayeux
Donald L. Mayeux - #9130

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

MICHAEL and JOANN BALONEY  *

VERSUS  * CIVIL DOCKET NO. 6:14-CV-00467

TOYOTA MOTOR SALES, U.S.A, * JUDGE DOHERTY
INC.  * MAGISTRATE JUDGE HILL

*********************************************************************

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO MOTIONS
FOR SUMMARY JUDGMENT AND
EXCLUSION OF EXPERT TESTIMONY**

TABLE OF CONTENTS

Factual and Procedural Background................................................................. 5

Law and Argument............................................................................................ 5

Airbag Deployment Would Have Lessened Plaintiff's Injuries........................ 14

Exclusion of Plaintiff's Expert Testimony........................................................ 15

Summary............................................................................................................ 19

TABLE OF AUTHORITIES

ACMG of Louisiana, Inc. v. Jones, 35, 102
　　(La. App. 2d Cir. 9/26/01); 796 So.2d 704,
　　707, writ denied, 2001-2869 (La. 1/11/02);
　　807 So.2d 240................................................................................................ 8

Allen v. Rapides Parish School Bd., 204 F. 3d 619,
　　621 (5th Cir. 2000)........................................................................................ 6

Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
    106 S. Ct. 2505 (1986)........................................................................  6

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23,
    106 S.Ct. 2548 (1986)........................................................................  5

Daubert v. Merrill Dow Pharmaceuticals, 509 U.S. 579,
    113 S.Ct. 2786 (1993)........................................................................  15, 19

Evans v. City of Houston, 246 F.3d 344, 347-48 (5th Cir. 2001)..............  5, 6

Fed. R. Civ. Pro. 56(a)................................................................................  5

Louisiana Product Liability Act,
    La. Rev. Stat. 9:2800.51 *et seq*. (West 2012)...................................  7

Matsushita, 475 U.S. at 587.......................................................................  6

National Ass'n of Gov't Employees v. City Pub. Serv. Bd.,
    40 F.3d 698, 712 (5th Cir. 1994)........................................................  6

Seaman v. Seacor Marine L.L.C., 326 Fed. Appx. 721
    (5th Cir. 2009)....................................................................................  16

Texas Manufactured Housing Ass'n v. Nederland,
    101 F.3d 1095, 1099 (5th Cir. 1996),
    cert. denied, 521 U.S. 1112, 117 S. Ct. 2497 (1997).........................  6

Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).............................................  6

Welch v. Technotrim, Inc., 34,355 (La. App. 2d Cir. 1/24/01);
    778 So.2d 728, 733, writ denied,
    2001-0512 (La. 6/15/01); 793 So.2d 1232.........................................  8

**MAY IT PLEASE THE COURT**:

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a single vehicle incident that occurred in the morning hours of April 1, 2013.  Plaintiff, Michael Baloney, was in the front seat of his 2012 Toyota driven by his son, Albert Baloney, on Verot School Road in Lafayette, Louisiana.  Plaintiff alleges that another vehicle had entered the Avalon's lane of travel forcing Albert to steer to the right into a ditch.  He was going around 35 miles per hour.  The Avalon struck two (2) metal culverts resulting in the car rolling over and impacting the ditch embankment with its roof.  Plaintiff claims that the airbags should have deployed, but they did not.  He claims damages against Toyota Motor Sales for the severe injuries he sustained.

## LAW AND ARGUMENT

Summary judgment is appropriate when *"the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."*  **Fed. R. Civ. Pro. 56(a)**; see also, **Celotex Corp. v. Catrett**, *477 U.S. 317, 322-23*, *106 S.Ct. 2548 (1986)*; **Evans v. City of Houston**, *246 F.3d 344, 347-48 (5th Cir. 2001)*.  Plaintiff agrees that these cases, as cited by the defendant, are appropriate.  Also, the party moving for a summary

judgment must demonstrate the absence of any genuine dispute regarding any material fact. *"As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."* **Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996)**. There definitely is no absence of genuine issue of material fact. It's very obvious that there is a legitimate dispute.

Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. **Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505 (1986)**; **Allen v. Rapides Parish School Bd., 204 F. 3d 619, 621 (5th Cir. 2000)**; **Evans, 246 F. 3d at 348**. The non-movant must demonstrate with "significant probative evidence" that there is an issue of material fact warranting a trial. **Texas Manufactured Housing Ass'n v. Nederland, 101 F.3d 1095, 1099 (5th Cir. 1996)**, **cert. denied, 521 U.S. 1112, 117 S. Ct. 2497 (1997)**.

There is no genuine issue of material fact if, viewing the evidence in light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. **Matsushita, 475 U.S. at 587**; **National Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994)**.

*La. Rev. Stat. 9:2800.52 (West 2012)*, the Louisiana Products Liability Act ("LPLA") controls plaintiff's claims against Toyota. Plaintiff must prove that his alleged damages were *"proximately caused by a characteristic of the vehicle that renders the vehicle unreasonably dangerous when such damage arose from a reasonably anticipated use of the vehicle by the claimant or another person or entity."* *La. Rev. Stat. 9:2800.54 (A) (West 2012)*. The mere fact that an accident occurred does not give rise to an inference that a defect existed in the product. A product may be "unreasonably dangerous" in one or more of four ways: [a] in construction or composition; [b] in design; [c] for lack of adequate warnings; and/or [d] for failing to conform to an express warranty of the manufacturer. *La. Rev. Stat. 9:2800.54 (B) (West 2012)*. Plaintiff does claim that the vehicle was defective because the Avalon's passenger airbag did not deploy as designed. Defendant argues that the airbag should deploy at a speed of 16.2 to 18.2 miles per hour and that the speed was only 13.7 miles per hour, therefore, the airbags were doing what they were supposed to do, not deploying at this slow speed. Plaintiff disagrees with this. A genuine issue exists.

To establish a manufacturing defect under the LPLA, "a claimant must demonstrate not only what a manufacturer's specifications or performance

7

standards are for a particular product, but how the product in question materially deviated from those standards so as to render it 'unreasonably dangerous.'" ***Welch v. Technotrim, Inc.*, 34,355 (La. App. 2d Cir. 1/24/01); 778 So.2d 728, 733, writ denied, 2001-0512 (La. 6/15/01); 793 So.2d 1232**. *"Ultimate or conclusory facts and conclusions of law cannot be utilized on a motion for summary judgment."* ***ACMG of Louisiana, Inc. v. Jones*, 35, 102 (La. App. 2d Cir. 9/26/01); 796 So.2d 704, 707, writ denied, 2001-2869 (La. 1/11/02); 807 So.2d 240**. Plaintiff does allege that the airbag system in the Avalon did not deploy as designed and that it deviated from the manufacturer's specifications or performance standards. Defendant claims that plaintiff cannot prove this. Plaintiff disagrees. His expert, Mr. Laughlin, retrieved the data from the EDR. It showed that the Avalon at the very last multisecond was going over 18 miles per hour. Defendant's expert, Thomas Perl, stated in paragraph 10 (page 7) of his report that:

> *"Toyota supplied airbag deployment testing documents for various frontal impact modes, and these materials established the designed deployment threshold levels for the subject 2012 Avalon. The 'Head-On Collision' and 'Oblique Collision' tests best represent the impact experienced in the subject crash. The 'Head-On' deployment test speed was 16.2 mph (26 km/h) and the 'Oblique Collision' deployment test was 18.6 mph (30*

8

*km/h)."*

These standards of airbag deployment provided by Toyota establishes that the airbag should have deployed because the speed was enough. The photographs in evidence show that the Avalon was extensively damaged and the impact was certainly severe enough to deploy the airbags. Mr. Laughlin states that he noticed that the right front axle of the car was moved back 2 ½ inches from impact. It takes a tremendous force to move a full axle with all things attached to it back 2 ½ inches, but it did happen because the impact was so severe. The impact should have caused the airbags to deploy. If it would have deployed, it would have prevented Mr. Baloney from being thrown forward so violently against the dash and would have prevented the severe injuries that he had to his back.

Defendant also argues that Mr. Laughlin gave no description of his methodology other than his experience and that he did not know the relevant airbag deployment thresholds to the Avalon. Toyota has now provided the relevant airbag deployment thresholds and the speed of 18 miles per hour is enough to deploy it and that's what the black box said the car was traveling at the last multisecond before impact. Mr. Laughlin states in his opinion:

> *"However, speaking from my experience as an accident reconstructionist and a CDR technician, the speed change and time change for this crash pulse are in the range for which an airbag deployment typically is expected.*
>
> *In all probability, the triggering event was the event which pushed the right front axle rearward. Analysis to date indicates that this event would have happened prior to rolling over."*

He based his opinion on the inspection of the Toyota, inspection of the accident scene, downloading the information from the airbag control module, carefully studying the police report and studying all the medical records concerning Mr. Baloney.  None of the defendant's experts ever saw the Toyota, never talked to Mr. Baloney, and never met the police officer.  They are just relying on the EDR black box information, as Mr. Laughlin did.

      Additional information from the EDR black box showed that the Toyota was traveling 16.2 miles per hour from a time 4.813 seconds to 1.741 seconds prior to impact, and at a speed of 18.6 miles per hour from a time 0.717 seconds prior to impact.  This data comes from the EDR report in Section "Pre-Crash Data", showing from -5 to 0 seconds, a vehicle speed at 1.74 seconds (16.2 mph), and at -0.717 seconds (18.6 mph), and at 0 seconds point of impact,

18.6 miles per hour. Accordingly, the airbags did not act as Toyota had designed them. They did not deploy as they should have because the speed was sufficient according to Toyota's own standards.

The EDR black box indicated that the longitudinal Delta-V crash pulse indicated that there was a reduction of 13.7 miles per hour during the crash sequence. Plaintiff understands this to mean that the car was not actually traveling at 13.7 miles per hour when the final crash occurred, but that the speed had reduced at least that amount from a higher speed. The police report indicated that Albert Baloney was traveling approximately 35 miles per hour when he veered to the right into the shoulder to avoid being struck by a right turning vehicle. He immediately hit the ditch and the culverts and flipped over. The initial speed was around 35 miles an hour. According to the longitudinal crash pulse test, the speed reduced 13. 7 miles per hour and if the initial speed was 35, that would have made the car speed at 21.3 miles per hour when it started through the ditch. It then reduced the actual speed to 16.2 and then just a fraction of a second later, it jumped to 18.6, and then the impact. Albert Baloney's statement indicates that he was going around 35 miles per hour. The police report estimated his speed at 45 miles per hour.

Defendant's experts claim that since Toyota's airbag deployment testing needs 16.2 and 18.6 miles per hour as the speed where the airbags should have deployed, and since the EDR download reported a Delta-V of 13.7 miles per hour, that 13.7 miles per hour put the impact below the designated deployment threshold of the subject Avalon. Plaintiff claims that was not the speed of the car, but a reduction in the speed from a higher speed. The information found from the black box as to the speed was sufficient to deploy the airbags. It met the Toyota standards of deployment. Accordingly, a genuine issue of material fact does exist as to what the experts are saying and as to what the longitudinal crash pulse Delta-V speed means and defendant's motion for summary judgment should be denied.

Plaintiff also contends that Toyota was fully aware of problems that they were having with their airbags because they recalled approximately 803,000 vehicles in the United States, including the 2012 Toyota Avalon, due to a problem with the air conditioning condensers. *"'Water from the air-conditioning condenser unit housing could leak onto the airbag control module and cause a short circuit, resulting illumination of the airbag warning light.', said Toyota in a statement on Thursday. ' In some instances, the airbags could*

*become disabled or could inadvertently deploy. In limited instances, the power steering assist function could also become inoperable if a communication line in the airbag control module is damaged.'"* They wanted all owners to bring their cars in. *"Toyota dealers will apply sealant and install a cover to the air-conditioning condenser unit-housing seam located above the airbag control module."* According to Toyota, *"sometimes spider webs can create a blockage in a drainage tube coming from the air-conditioning condenser. That can cause water to drip down onto an airbag control module, which could cause the airbag to inflate and deploy at the wrong time, Toyota said. Also, power steering may be affected by a leaky condenser."* This expected recall would affect more than 800,000 vehicles. This notice was dated October 18, 2013. Plaintiff also contends that readings from the black box on his vehicle indicated that the rear airbags were, in fact, disabled at the time of the crash. This would not have affected plaintiff, but it does show that Toyota was having problems with the airbags. The front airbags could, in fact, have been disabled because of water dripping down into the airbag control modules. It just hadn't been discovered yet, or at least not reported by Toyota until several months after plaintiff's accident.

## AIRBAG DEPLOYMENT WOULD HAVE LESSENED PLAINTIFF'S INJURIES

Defendant claims that he cannot prove that his damages would have been less severe had the airbags deployed. Plaintiff firmly believes that he would not have been hurt so severely. There is no question that plaintiff was badly injured. Defendant's experts claim that the force of the car came from underneath the seat of the car and pushed the plaintiff up and crushed his vertebra. The car did go into the ditch on its right side and when it hit the culverts, it did go up into the air and flip over. However, there was no damage found to the underneath of the car. The front end of the car hit two culverts. It was a direct impact. It pushed the axle back 2 ½ inches. It did push the right side of the front end up because of the severe impact, but the airbags should have deployed at that time. They didn't. The impact flipped the car over on its rooftop. There was probably movement by the car when it hit the culverts to make it begin flipping over to its left. However, that doesn't mean that is what crushed Mr. Baloney's T-12 vertebra. Plaintiff claims that it was crushed from being thrown forward, because it put so much pressure on the T-12 area. There was no injury to Mr. Baloney in his buttocks are or to his L5-S1, or L4-L5, or

L3-L4, or L2-L3.  There was no mention of any type of injuries to the tailbone and there was no broken spine or any injuries to the lower part.  All of his injuries were to the T-12 area which is in the middle of the back and a rupture of the L1 disc and plaintiff claims that is from being thrown forward and caused his back to bend forward so quickly and so severely.  If he would have had the airbag coming out at him, he would not have been bent forward so forcefully.

      Attached are medical records of Dr. Jason Cormier, a neurosurgeon, who did the emergency surgery on April 1 - 2, 2013, and explains thoroughly where he inserted the rods and pedal screws and bolts and all the hardware.  Attached is the doctor's statement which reads:  *"Regarding the issue of air bags deploying, I feel that if the passenger side air bag deployed, it is possible, but not certain, that this might have lessened the patient's severity of injury, but to what degree I cannot say . . .".*

      This is an issue that is very disputable.  It should be one that should be referred to the trial on the merits.  Defendant is asking for summary judgment on the grounds that if the airbag would have deployed, Mr. Baloney would still have had this crushing injury.  Plaintiff disagrees.  A genuine issue of material fact does exist and should be referred to the merits.

## EXCLUSION OF PLAINTIFF'S EXPERT'S TESTIMONY

Defendant claims that Mr. Laughlin's opinion does not meet the requirements of the ***Daubert v. Merrill Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786 (1993)**, in that the expert opinion has to be based on types of facts that would typically be used by an expert in relation to airbag deployment. Defendant claims that since Mr. Laughlin prepared his opinion without any reference to the actual applicable airbag deployment thresholds, this precludes him from opining as to whether the Avalon airbags should have deployed in the accident.

When Mr. Laughlin gave his initial report, he didn't know the Toyota standards, but now defendant has submitted its specifications for airbag deployment, and Mr. Laughlin has considered these. These specifications were stated in Dr. Thomas Perl's report at Paragraph, Page 7, which was previously discussed. Mr. Laughlin has considered the Toyota specifications for airbag deployment. Defendant cites several cases which we agree control the case. In ***Seaman v. Seacor Marine L.L.C.*, 326 Fed. Appx. 721 (5th Cir. 2009)**, in which the 5th Circuit affirmed the trial court's exclusion of expert testimony that was not based on any proper methodology, or specific facts, and which the court

found was based on nothing other than plaintiff's counsel's representations as to the facts. The court in the **_Seaman_** case said that *"**The expert's testimony must be reliable at each and every step or else it is inadmissible.**"* In the **_Seaman_** case, the expert's opinion was merely guess work and she did not rely on data which sustained her opinions. There is no doubt that an expert opinion must have knowledge of the facts and circumstances of the case and must be based on sound evidence. Mr. Laughlin's opinion is based on inspection of the vehicle and the black box, inspection of the scene, review of the accident report, and discussion of the accident with the plaintiff, and studying all of his medical records. That is much more than the defendant's experts did. Mr. Laughlin does rely on the information that he obtained from the EDR black box. He analyzed the material.

   Mr. Laughlin is a highly qualified expert in the field of accident reconstruction and airbag deployments. His resume is attached. He has been consulted and given opinions and testified in 103 cases in both Federal courts and State courts. His Curriculum Vitae, which is attached, lists each case and court from September, 2001 through December, 2014. He is well known and respected as an expert in the field of biomechanical engineering for over 17

years. He has applied engineering principals to the areas of accident reconstruction, injury potential/causation analysis, human factors analysis, failure analysis, and medical device engineering. As a forensic engineer, he has reconstructed accidents involving automobiles, motorcycles, pedestrians, amusement park rides, and other industrial equipment. He is qualified in performing complex analysis to determine the effects of occupant restraint systems, such as airbags and seatbelts. He is currently a medical device consultant for an Independent Institutional Review Board to determine the merit and safety of device oriented clinical trials. He has nine (9) extensive publications. He is a seasoned professional and very qualified. His testimony will meet all the Daubert standards and requirements.

In his declaration, or affidavit, Mr. Laughlin states that he is aware of the opinions of Thomas R. Perl and Gregory A. Miller, experts on behalf of Toyota. According to Mr. Perl and Mr. Miller, the "Head-On Collision" deployment test speed was 16.2 mph and the "Oblique Collision" test speed was 18.6 mph. He further states: *"It is unclear from the verbiage used by Mr. Perl and Mr. Miller whether or not they are using impact speeds of Delta-V for their analysis. It is also unclear whether the tests relied upon by Mr. Perl and Mr. Miller are appropriately applied. Crash testing is used to validate a design and*

*will establish a Delta-V at which an airbag will deploy, but may not necessarily establish a 'threshold'. Review of these test documents is necessary to determine the scope and intent of the testing and to determine if Mr. Perl and Mr. Miller appropriately applied the results. Furthermore, these test results should be compared to Toyota's design documents to determine whether the crash testing does indeed validate Toyota's intended airbag deployment threshold for a 2012 Avalon."* Mr. Laughlin is a very qualified and experienced expert. He meets the **_Daubert_** standard. His testimony should not be excluded.

## SUMMARY

As a genuine issue of material fact exists on whether the airbag should have deployed and on whether Mr. Baloney's injuries would have been less severe had the airbags deployed, the summary judgment should be dismissed or referred to the merits. As Mr. Laughlin is a qualified expert in the issues involved in this case and can meet all the **_Daubert_** requirements of an expert, his testimony should be allowed.

RESPECTFULLY SUBMITTED

 s/Donald L. Mayeux
**DONALD L. MAYEUX - #9130**
P. O. Box 1460
Eunice, Louisiana   70535

                                                Telephone: (337) 457-9610
                                                Facsimile: (331) 457-9648
                                                Attorney for **Michael Baloney**

## CERTIFICATE

      **I HEREBY CERTIFY** that on this 19th day of June, 2015, a copy of this pleading was filed electronically with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all known counsel of record.

                                                s/Donald L. Mayeux
                                                Donald L. Mayeux - #9130