U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - LAFAYETTE

JUL 30 2015

TONY R. MOORE, CLERK
BY _____
        DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| MICHAEL BALONEY, ET AL. | CIVIL ACTION NO. 14-0467 |
| VERSUS | JUDGE DOHERTY |
| TOYOTA MOTOR SALES, USA, INC. | MAGISTRATE JUDGE HILL |

### MEMORANDUM RULING

Pending before this Court are two motions filed by defendant Toyota Motor Sales, USA, Inc.: (1) "Motion for Summary Judgment" [Doc. 16] and (2) "Motion to Exclude Testimony of John Laughlin" [Doc. 18]. The motions are factually related and intertwined and are therefore opposed by the plaintiffs in a single brief [Doc. 22], and Toyota has filed a Motion for Leave to File a Reply Brief [Doc. 23] in connection with the Daubert motion, as well as a Motion for Leave to File a Reply Brief [Doc. 24] in connection with the motion for summary judgment, both of which are herein GRANTED. For the following reasons, the Motion for Summary Judgment is GRANTED, which renders the Motion to Exclude Evidence MOOT.

I. **Factual and Procedural Background**

This case arises out of a single-vehicle incident that occurred in the early morning hours of April 1, 2013. It is undisputed plaintiff Michael Baloney was the front seat passenger in a 2012 Toyota Avalon being driven by Albert Baloney on Verot School Road in Lafayette, Louisiana. Plaintiffs allege another vehicle entered the Avalon's lane of travel, forcing Albert Baloney to steer to the right and into a ditch, where the Avalon struck a metal culvert, resulting in the car rolling over

and impacting the ditch embankment with its roof. The alleged other vehicle was never identified. Plaintiffs do not allege any vehicle malfunction or defect caused the incident itself, nor do plaintiffs allege the Avalon was defective in design. The crux of plaintiffs' claim against Toyota is that the "passenger side [front] airbag [of the Avalon] did not deploy as designed resulting in [Michael Baloney] sustaining severe injuries." Plaintiffs also allege if the airbag had deployed, Michael Baloney would not have sustained his injuries.

On April 15, 2014, this Court entered a Scheduling Order (Rec. Doc. 6) setting this matter for trial on September 8, 2015, and establishing various deadlines. Pursuant to that Scheduling Order, the deadline for plaintiffs to disclose their expert witnesses and provide defendants with their reports expired on February 18, 2015. Defendants were to do so by March 30, 2015. Plaintiffs' sole expert witness in this matter is Mr. John Laughlin, an expert in accident reconstruction and a "CDR technician."[1]

Toyota filed the instant motion for summary judgment and Daubert motion, intertwining and conflating two related issues pertaining to the evidence the plaintiffs have presented with respect to their airbag argument, and therefore, this Court will issue a singular ruling addressing the arguments in both motions.

## II. Law and Analysis

### A. Summary Judgment Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or declaratory judgment is sought may, at any time, move with or without supporting affidavits for summary judgment in the parties favor as to all or any part thereof." Fed. R. Civ. Pro. 56(b). Summary

---

[1] The term "CDR technician" is not defined by either party in the briefing.

judgement is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or is otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. Pro. 56(e)

As summarized by the Fifth Circuit in Lindsey v. Sears Roebuck and Co., 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; *see also*, Moody v. Jefferson Parish School Board, 2 F.3d 604, 606 (5th Cir.1993); Duplantis v. Shell Offshore, Inc., 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).
>
> The Supreme Court has instructed:
>
> The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."
>
> [. . . .]

> . . . In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. *Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.*

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 888-89 (1990)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)(emphasis added)).

The Fifth Circuit has further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)(citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." *Id.* To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts*

4

*v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

B. **Controlling Law**

Given that the plaintiffs' claims are filed in this Court by way of diversity jurisdiction, the parties agree Louisiana substantive law, and specifically, the Louisiana Products Liability Act, "establishes the exclusive theories of liability for manufacturers for damage caused by their products," La. Rev. Stat. §9:2800.52 (West 2012) and therefore controls plaintiffs' claims against Toyota. Under the LPLA, "A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in" the LPLA. To prevail against Toyota, plaintiff Michael Baloney must prove his alleged damages were "proximately caused by a characteristic of the [vehicle] that renders the [vehicle] unreasonably dangerous when such damage arose from a reasonably anticipated use of the [vehicle] by the claimant or another person or entity." La. Rev. Stat. §9:2800.54 (A) (West 2012). That is, the mere fact that an accident occurred does not give rise to an inference that a defect existed in the product. *Clement v. Griffin*, 634 So.2d 412 (La. App. 4th Cir.), *writ denied*, 637 So.2d 478 and 637 So.2d 479 (La. 1994); *Jaeger v. Automotive Casualty Inc. Co.*, 682 So.2d 292 (La. App. 4th Cir. 1996); *Ashley v. Gen. Motors Corp.*, 666 So.2d 1320 (La. App. 2nd Cir. 1996). Rather, a product may be "unreasonably dangerous" in one or more of four ways: (a) in construction or composition; (b) in design; (c) for lack of adequate warnings; and/or (d) for failing to conform to an express warranty of the manufacturer. La. Rev. Stat. 9:2800.54 (B) (West 2012). In the instant case, plaintiffs claim the vehicle was defective because the Avalon's passenger airbag did not deploy properly, considered a construction or composition defect claim.

A product is unreasonably dangerous in construction or composition if, at the time the

product left the manufacturer's control, it deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer. La. R.S. §9:2800.55. To prevail on a construction or composition claim, a claimant must demonstrate not only what a manufacturer's specifications or performance standards are for the particular product, but how the product in question materially deviated from those standards so as to render it "unreasonably dangerous." *Welch v. Technotrim, Inc.*, 778 So.2d 728, 733 (La. App. 2nd Cir. 2001), *citing Morris v. United Services Auto. Ass'n*, 756 So.2d 549 (La. App. 2nd Cir. 2000).

In a case involving an allegedly defective air bag, federal courts interpreting Louisiana law have held that to survive summary judgment, a plaintiff must demonstrate or provide sufficient evidence to create a genuine issue of material fact regarding the following: (1) the driver's side air bag in his vehicle was defective or "unreasonably dangerous" because it did not deploy; and (2) his injuries were enhanced or made worse by the defect. *Battistella v. Daimler Chrysler Motors, Co., LLC*, 2004 WL 1336444 (E.D.La. 2004), *citing Batiste v. General Motors Corp.*, 802 So.2d 686, 87 (La. App. 4th Cir. 2001); *Caboni v. General Motors Corp.*, 278 F.3d 448, 544 (5th Cir. 2002).

1.   **Evidence of defective air bag**

In its motion for summary judgment, Toyota argues the evidence in this case is insufficient to support plaintiffs' claim that the airbag system did not perform properly or that the non-deployment caused Michael Baloney's injuries and accordingly, Toyota is entitled to judgment as a matter of law. To prove their claim at trial, under Louisiana law, the plaintiffs are required to demonstrate not only what a manufacturer's specifications or performance standards are for the particular product, but how the product in question materially deviated from those standards so as

to render it "unreasonably dangerous." *Welch*, 778 So.2d at 733. To support its motion, Toyota argues that despite producing over 3,000 pages of test reports and standards relevant to the Avalon's airbag system to the plaintiffs on January 15, 2015, well in advance of the plaintiff's expert report deadline of February 18, 2015, Mr. Laughlin does not know the relevant airbag deployment thresholds applicable to the subject Avalon and merely assumes without data or information that the force of the impact experienced by the Avalon was sufficient to deploy the vehicle's airbag. Toyota argues Mr. Laughlin bases this opinion merely upon his interpretation of the data downloaded from the Avalon's event data recorder ("EDR") and unsupported assumptions made by him regarding other types of deployment thresholds applicable to the subject Avalon. Toyota weaves summary-judgment-type burden of proof arguments with arguments from its Daubert motion, arguing Mr. Laughlin, plaintiff's sole expert, admits in his report that he does not know whether the Avalon's EDR information concerning the first 20 milliseconds of the incident – a crucial time period in which the airbag "decides" whether it is going to deploy – conforms to Toyota's design specifications, and that, without knowing what the airbag deployment specifications are for the vehicle, Mr Laughlin cannot opine as to whether the Avalon's airbag system performed properly.

In his report, Mr. Laughlin states that in his "experience as an accident reconstructionist and a CDR technician," the speed change and time involved in the subject accident are in the range for which an airbag deployment are typically expected. However, Mr. Laughlin admittedly does not base his opinions on the actual airbag design specifications for the Avalon in question. Nor has the plaintiff provided peer review articles or other evidence to support Mr. Laughlin's opinion that the airbag should have deployed. Consequently, the plaintiff is relying on the vehicle's EDR and extrapolating from the information provided from that device – as well as its examination of the

7

vehicle itself – to render his opinion. Relatedly, Toyota argues it was not afforded the opportunity to inspect the Avalon, because after Mr. Laughlin's examination of the Avalon, it appears the plaintiff failed to preserve the vehicle. The plaintiffs appear to have had access to the vehicle after Mr. Laughlin examined it, clearly with the expectation that there would be litigation. Although the Court is not asked to address the issue of spoliation as a free-standing tort or evidentiary concept with specific consequences at this time, Toyota appears to argue in the alternative that the plaintiffs should not be permitted to use the information gleaned by Mr. Laughlin in his inspection of the vehicle because of the obvious prejudice to Toyota caused by the foregoing circumstances.

Considering the foregoing, in both its motion for summary judgment and its Daubert motion, Toyota has questioned the sufficiency of plaintiff's evidence with respect to its construction and composition defect claim and has relatedly challenged the reliability of the evidence with respect to that claim. However, this Court need not determine whether, in fact, Mr. Laughlin utilized a proper methodology in his examination of the vehicle, because the Court concludes the plaintiff cannot, as a matter of law, carry his burden of proof on a required element of his case under the LPLA, that is, by showing his injuries were made more severe by the failure of the air bag to deploy, as discussed hereinbelow.

    2.    **Evidence of injury**

To prove causation in an LPLA case, a plaintiff must show proximate causation, a link between the actions of a manufacturer and the injury-causing product. *Jefferson v. Lead Industries Ass'n, Inc.*, 106 F.3d 1245, 1247 (5th Cir. 1997). In *Caboni v. General Motors Corp.*, 398 F.3d 357, 360-62 (5th Cir. 2005), a defective airbag case, the court held the plaintiff's burden is to "establish that he sustained more severe injures than he would have received if the airbag had deployed."

8

Louisiana jurisprudence holds this enhancement of injuries is required to be proved by expert evidence. *See, e.g., Caboni* 398 F.3d at 360-62 (5th Cir. 2005) ("We agree with the district court in [*Battistella*] that 'whether or not the failure of the driver's side air bag to deploy 'enhanced' plaintiff's injuries, is not a part of the everyday experience of the consuming public. Thus, jurors would need expert testimony to evaluate this issue.'").

In the instant case, the plaintiff has submitted a letter – not a report – from a medical provider, Dr. Jason Cormier, which states as follows:

> Regarding the issue of airbags deploying, I feel that if the passenger side airbag deployed it is possible, but not certain, that this might have lessened the patient's severity of injury but to what degree I cannot say, as I don't have specific details of velocity of both vehicles and other events that surround the motor vehicle accident.[2]

Toyota argues the letter is not timely under the Court's scheduling order as the report of an expert and/or treating physician, nor is it otherwise proper or admissible.

In *Battistella*, the district court excluded the expert report of Dr. A. L. Baxley, who opined as to how the plaintiff's injuries were caused and how deployment of the airbag would have prevented or lessened the plaintiff's injuries. Dr. Baxley had timely prepared a report in the *Battistella* case – something Dr. Cormier apparently has not done in this case – and used consumer complaints and similar information about other accidents to form his opinions about the plaintiff's accident and injuries. In rejecting Dr. Baxley's report, the court explained:

> Most importantly, Dr. Baxley does not explain *how* Plaintiff's head, shoulders, upper body, knee, thumb, and possibly his spine, were injured in the accident, and *how* air bag deployment would have prevented or lessened the injuries. Dr. Baxley cannot answer these questions because he does not possess any medical expertise or particularly specialized knowledge in biomechanics, occupant kinematics or any

---

[2] *See* June 18, 2015 letter of Dr. Jason Cormier, attached as unmarked exhibit to plaintiffs' opposition to Toyota's motion for summary judgment [Doc. 22].

9

other relevant field, to offer a reliable opinion on the enhanced causation issue presented by this case. ***Thus, the court concludes that Dr. Baxley's opinion that Plaintiff's injuries were enhanced because the driver's side airbag did not deploy, lacks reliability and is not based on any scientific methodology. And, the court must exclude Dr. Baxley's opinion testimony in this regard.*** Fed.R.Evid. 702 & 703; Kumho Tire Co. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); Daubert v. Merrell–Dow Pharmaceuticals, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

*Battistella*, 2004 WL 1336444 at *2 (emphasis added) (internal citations omitted). The court ultimately concluded the plaintiff had "not offered legally sufficient evidence to create a genuine issue of material fact on an essential element of his case (i.e., that he sustained more severe injuries than he would have received if his driver's side air bag had deployed)," and therefore, Chrysler was entitled to summary judgment. *Id.* at *3.

Similarly, in the instant case, Dr. Cormier opines he is not even certain that airbag deployment would have lessened Mr. Baloney's severity of injury. Indeed, Dr. Cormier states he admittedly "[does not have] specific details of velocity of both vehicles and other events that surround the motor vehicle accident." Clearly, Dr. Cormier has not explained how plaintiff was injured in the accident, or how air bag deployment would have prevented or lessened his injuries. It appears Dr. Cormier lacks the same information about the Avalon's air bag system that Mr. Laughlin lacks. Accordingly, this Court concludes Dr. Cormier's opinion that "it is possible, but not certain" that air bag deployment "might have lessened the patient's severity of injury" lacks sufficient and actual basis and is not based on any accepted methodology.

With respect to Toyota's motion for summary judgment, the issue before the Court is whether the plaintiff has submitted sufficient evidence to create a genuine issue of material fact that the failure of the airbag to deploy resulted in enhanced injuries to the plaintiff. Setting aside for the

moment whether the letter of Dr. Cormier is even admissible – given that it does not appear to be an admissible expert report under the federal and/or local rules of this Court – the Court concludes the plaintiffs fail to satisfy their causation burden under Louisiana law. For this reason, the plaintiff cannot survive the instant motion for summary judgment.[3]

Considering the foregoing,

IT IS ORDERED that the Motion for Summary Judgment [Doc. 16] filed by Toyota Motor Sales, USA, Inc. is GRANTED. IT IS FURTHER ORDERED that the "Motion to Exclude Testimony of John Laughlin" [Doc. 18] is DENIED AS MOOT.

It appears that the instant Ruling resolves all disputes between the parties and is, therefore, dispositive of the case. Therefore, IT IS ORDERED that the parties shall submit a Final Judgment, approved as to form, within ten days of the date of this Ruling.

THUS DONE AND SIGNED in Lafayette, Louisiana, this ___30th___ day of July 2015.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

[3] The Court recognizes the severity of this outcome, however the law is clear that the plaintiff must support his claim with evidence of enhancement of his injury due to the failure of the airbag to deploy. The plaintiff has clearly not done so within the requirements of the federal rules of civil procedure and this Court's scheduling order in this matter and offers no explanation for this failure.